UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

——————————————————————————— X

JOSE WILLIANS ORELLANA LAINEZ

*Petitioner,*                                    EMERGENCY PETITION
                                                 A No. 2053777453
v.

JOHN TSAKOURIS, NY Director,  Field Office,
        Enforcement and Removal Operations.
        U.S. Immigration and Customs Enforcement;

TODD LYONS, Director, U.S. Immigration
        and Customs Enforcement;

MARKWAYNE MULLIN, Secretary of the U.S. Department of
        Homeland Security; and

TODD BLANCHE Attorney General of the
        United States,

LUIS SOTO, Warden, Delaney Hall, NJ

        *Respondents.*

——————————————————————————— X

PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2241) AND EMERGENCY ORDER
TO SHOW CAUSE WITH TEMPORARY RESTRAINING ORDER

1.  **JOSE WILLIANS ORELLANA LAINEZ** ("Petitioner"), by counsel, respectfully petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and moves by Emergency Order to Show Cause and Temporary Restraining Order. This application is filed on an emergency basis to prevent Petitioner's unlawful transfer or removal and to preserve this Court's jurisdiction.

2.  This Petition challenges the legality of Petitioner's arrest and continued detention under the Fourth Amendment, 8 U.S.C. §§ 1231, and 1357, the Due Process Clause, and binding agency regulations. The central question presented is straightforward: under what lawful statutory authority is Petitioner currently detained, and was that authority validly invoked?

3.  The Supreme Court has emphasized that freedom from physical restraint lies at the core of the liberty protected by the Constitution. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Where detention is

1

challenged, the government must identify and justify the legal authority for incarceration.

4. Section 2243 provides that once a habeas petition is presented, *the Court shall "forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted," and that the custodian "shall make a return certifying the true cause of the detention."* The statute further contemplates expedition, providing that the return shall be made within 3 days unless additional time is allowed for good cause.

5. 28 U.S.C. § 2241(c)(3) provides that a court shall grant the writ of habeas corpus if a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." The Fifth Amendment requires that "[n]o person shall be . . . be deprived of life, liberty, or property, without due process of law." U.S. Cont. amend. V. These due process rights apply to all persons in the United States, whether citizens or not. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

6. "The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011); see also *Ozturk v. Hyde*, 136 F.4th 382, 393 (2d Cir. 2025). Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.,* 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

7. "The typical remedy" for unlawful executive detention," "is, of course, release," if the government's ongoing detention of Petitioner, in the face of yet another complete failure of process, entitles him to immediate release *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "[T]he traditional function of the writ is to secure release from illegal custody"; it is the "usual remedy by which a man is restored again to his liberty, if he have been against law deprived of it." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)

2

(internal citation omitted).  Habeas corpus "is perhaps the most important writ . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (internal citation omitted).  And "if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." *Id*. at 402.

8.  If a detention results from an agency violating its own regulations, the Government may not have provided the detainee with the process to which he is due under the Constitution, and the writ can issue. *See Funes v. Francis*, --- F. Supp. 3d ---, No. 25-CV-7429, 2025 WL 3263896, at *24–25 (S.D.N.Y. Nov. 24, 2025); *E.M.M. v. Almodovar*, No. 25-CV-08212, 2025 WL 3077995, at *6 (S.D.N.Y. Nov. 4, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 414–15  (S.D.N.Y. 2025); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 499 (S.D.N.Y. 2025); *Chipantiza-Sisalema v. Francis*, No. 25-CV-05528, 2025 WL 1927931, at *3–4 (S.D.N.Y. July 13, 2025); *Roman-Cruz v. Lyons*, No. 25-CV-10522, 2026 WL 114936, at *2–3 (S.D.N.Y. Jan. 15, 2026).  "The common-law history of the writ underscores that the traditional remedy in habeas is release from illegal custody." *Funes*, 2025 WL 3263896, at *24 (citing *Preiser v Rodriguez*, 411 U.S. 475, 484 (1973)); *accord Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention." (emphasis in original)); *Munaf v. Geren*, 553 U.S. 674, 693–94 (2008).

**THE ILLEGAL ARREST**

9.  **JOSE WILLIANS ORELLANA LAINEZ is a 42-year-old man born in Honduras who has lived in the US since at least since his last arrival in 2014.**

10. **Upon information and belief based on family statements, he has led an exemplary, law-abiding life and has never ever been arrested in the in the United States or anywhere.**

11. **He was arrested in upstate New York by ICE agents as he was going to work with co-workers.**

12. **ICE agents broke the window trying to effectuate an arrest.**

13. The ICE agents did not have probable cause to arrest him.

14. At no time, neither before, during or after his arrest, did ICE ever conduct a meaningful individualized custodial determination or custody review before or contemporaneously with his arrest, as required by

law.

15. Petitioner was given no prior notice that he would be arrested, nor an opportunity to be heard on ICE's decision to detain him, and he was not afforded due process.

16. During or after his arrest, he was not permitted to make any phone calls, and he did not even know where he was being taken.

17. DHS is now incarcerating him indefinitely without an individualized custody determination as required by the Fourth Amendment, the Due Process Clause of the Fifth Amendment, and the governing detention statutes and regulations.

18. As proven below, ICE unlawfully arrested him without 1) a "reason to believe that he was removable" and that 2) he was "likely to escape before a warrant can be obtained," which are the minimum requisites under INA Section 287 (a)( 2), 8 USC 1357 (a)(2) for a warrantless arrest by ICE.

19. When ICE agents later fingerprinted him and booked him at DHS processing offices, they did not follow statutorily and constitutionally guaranteed procedures for due process.

20. That is why Petitioner now comes to this Honorable Court seeking justice.

**THE RELEVANT IMMIGRATION HISTORY**

21. The Petitioner last entered the U.S. illegally through the southern border in 2014.

**Emergency Habeas Petition, Request for Immediate Order to Show Cause Under 28 U.S.C. § 2243, and Application for Temporary Restraining Order to Preserve Jurisdiction and Meaningful Review**

22. Petitioner respectfully submits this emergency petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the legality of his arrest and continued detention by Respondents.

23. Because Petitioner is presently in federal immigration custody and subject to transfer at any time, immediate judicial intervention is necessary to preserve this Court's jurisdiction and ensure meaningful review of the legality of detention.

24. Pursuant to 28 U.S.C. § 2243, Petitioner respectfully requests that the Court issue an Order to Show Cause directing Respondents to demonstrate why the writ should not be granted and to certify the true cause of Petitioner's detention. Section 2243 requires prompt judicial inquiry into executive restraint and the custodian to file a return setting forth the statutory and factual basis for confinement.

4

25. Wherefore, Petitioner respectfully requests that this Court Order the Respondents to Show Cause pursuant to 28 U.S.C. § 2243 why a Temporary Restraining Order should not remain in effect pending swift adjudication of the habeas petition:

a) Prohibiting Respondents from transferring Petitioner outside this District absent further order of this Court

b) directing Respondents to provide reasonable and timely access to counsel, including meaningful and confidential in-person legal visitation;

c) directing Respondents to file, within forty-eight (48) hours, a full return certifying the statutory and factual basis for detention pursuant to 28 U.S.C. § 2243;

d) requiring production, within forty-eight (48) hours of this Order, of all custodial and administrative documents supporting detention, as well as all DHS and ICE custody, detention, and administrative records, with appropriate relief for noncompliance;

e) producing Petitioner forthwith before this Court as necessary to effectuate meaningful habeas review; and upon adjudication of the Petition, granting the writ of habeas corpus and ordering Petitioner's immediate release from unlawful detention;

f) awarding reasonable attorney's fees and costs pursuant to the Equal Access to JusticeAct, 28 U.S.C. § 2412(d), should Petitioner prevail in this action;

g) ordering that Petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where Respondents will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a), that Petitioner be "entitled to release from the unlawful restrictions on his liberty which means, in the circumstances here, restoration of... the status quo ante." *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention]... including the ankle monitor and reporting requirements") and "an injunction barring deprivation [of any] of the [Petitioner's] rights without the requisite procedural protections." *Id. See Ccorihuaman v. Genalo* No. 26-cv-554 (E.D.N.Y. Feb 6, 2026) and

h) ordering that Respondents shall return to Petitioner all personal property belonging to Petitioner that was seized at the time of detention and that is currently in their custody, possession, or control, whether maintained directly by Respondents or by any contracted or affiliated facility, and that such property shall be returned in the same condition as it existed immediately prior to Petitioner's detention; and

i) Granting such other and further relief as this Court deems just and proper.

## PREFACE

### Petitioner's Arrest and Detention Without Notice of the Asserted Statutory Basis for Custody, Without a Contemporaneous Individualized Custody Determination, and Without the Administrative Record Violates the Fourth Amendment, the Fifth Amendment, the Immigration and Nationality Act, and Governing Regulations

26. At the time of arrest, Petitioner was not specifically advised under which statutory provision DHS claimed authority to arrest and detain him. He was not told whether DHS was proceeding under 8 U.S.C. § 1231, and was not provided with any official custody or detention documents, or any part of the

administrative file, or contemporaneous custodial documentation sufficient to determine which detention framework DHS intends to invoke. Under those circumstances—particularly where this Petition is being filed on an emergency basis to preserve jurisdiction before transfer and before DHS has produced the record—Petitioner is compelled to plead in the alternative. That is not speculation for its own sake; it is a necessary response to DHS's failure to identify the statutory basis for custody at the time liberty was first restrained.

27. Petitioner has not had an adequate right to counsel since his arrest, nor the opportunity to interview with an attorney, and the facts alleged about his case are based on interviews with family members and, as such, are made upon information and belief.

28. **If DHS ultimately claims detention under § 1231, DHS may not deprive a person of liberty without identifying a lawful statutory basis for custody, without complying with the procedures that govern that custody framework, and without affording constitutionally adequate process, including notice and a meaningful opportunity to be heard. Because DHS did not identify the asserted statutory basis for arrest at the time of detention, and because the record necessary to test that assertion has not been produced, Petitioner pleads in the alternative below and reserves the right to amend as soon as DHS discloses the administrative file and custodial documents.**

29. Petitioner files this action at the inception of custody, before Respondents have produced the administrative file or any reliable record identifying the legal basis for arrest or detention. As of filing, neither Petitioner nor counsel has been provided any contemporaneous custodial documentation, including any executed administrative warrant, charging document, reinstatement notice, revocation notice, custody determination, or record establishing whether Respondents purport to proceed under 8 U.S.C. 1231.

30. The governing constitutional principles are settled. The Fifth Amendment prohibits the Government from depriving any person of liberty without due process of law, and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). That protection

6

extends to noncitizens. *Id.* at 693. And when executive detention is imposed outside the ordinary criminal process, habeas review must be searching and real. See *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Boumediene v. Bush*, 553 U.S. 723, 783 (2008). The Second Circuit has likewise held that immigration detention implicates the most significant liberty interest and that challenges to the constitutionality of detention procedures are properly brought in habeas. See *Velasco Lopez v. Decker*, 978 F.3d 842, 850–54 (2d Cir. 2020); *Hechavarria v. Sessions*, 891 F.3d 49, 53–55 (2d Cir. 2018). As Judge Broderick recently summarized in granting habeas relief in a supervision-revocation case, "[i]f a detention is the result of an agency violating their own regulations, then the Government may not have provided the detainee with the process that they are due under the constitution and the writ can issue." *Ndoye v. Joyce*, No. 25-CV-8856 (VSB), slip op. at 5 (S.D.N.Y. Feb. 6, 2026) .

31. We believe the DHS may later contend that Petitioner is detained under 8 U.S.C. § 1231 because of a prior removal order, order of supervision, or purported reinstatement; that theory does not excuse the complete absence of contemporaneous process. Section 1231, however, is not "a free-roaming right to arrest and detain people any time [the Government] sees fit." *Diallo v. Joyce*, No. 25-CV-9909 (AS), slip op. at 3 (S.D.N.Y. Dec. 23, 2025) . As *Diallo* explained, § 1231(a)(6) authorizes only a period of continued detention "beyond the removal period"; it does not authorize the Government to seize a person anew, years later, without showing how the statutory and regulatory predicates for such custody have been met. *Id.* at 2–5 . Judge Subramanian therefore rejected the Government's claim of broad post-order detention power and held that the Government "can't detain anyone it wants. It needs a statutory basis to arrest and detain people." *Id.* at 2–3 . That reasoning applies here.

32. If Respondents invoke § 1231, they must still establish, with actual records, that a valid final order exists, that the claimed post-order detention framework truly applies, and that the procedures governing revocation of release, re-detention, or reinstatement were followed. Absent that showing, § 1231 cannot be assumed.

33. Nor may Respondents cure a lack of statutory authority by producing, after the fact, a theory of reinstatement under 8 U.S.C. § 1231(a)(5). Reinstatement is governed by 8 C.F.R. § 241.8, which

7

requires immigration officers to determine, at minimum, the existence of a prior removal order, the identity of the person arrested, and illegal reentry after removal. See 8 C.F.R. § 241.8(a); *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 149–50 (2d Cir. 2008). At the emergency-habeas stage, where the Government has produced no administrative file, no operative prior order, and no reinstatement packet, the Court cannot assume those determinations were made. Indeed, the limited records in similar cases show why the assumption would be unwarranted.

34. Petitioner therefore pleads in the alternative that if Respondents later invoke reinstatement, any such reinstatement had to be lawfully accomplished before or at the time of arrest and cannot retroactively validate detention.

35. The New York cases confirm that where supervision or post-order custody is invoked, notice and an opportunity to respond are not optional. In *Funes Gamez v. Francis*, No. 25 Civ. 7429 (PAE), 2025 WL 3263896 (S.D.N.Y. Nov. 24, 2025), Judge Engelmeyer held that ICE violated its regulations and due process where a noncitizen reporting for a scheduled check-in was "summarily informed that she would be taken into custody, without the notice or prompt informal interview that ICE's regulations require." The court found that "the manner in which Funes was taken into custody on September 8, 2025 violated ICE's regulations and due process, and orders her immediate release."

36. Likewise, in *Zhu v. Genalo*, No. 1:25-cv-06523 (JLR), 798 F. Supp. 3d 400 (S.D.N.Y. 2025), the Government acknowledged that the petitioner did not receive notice of revocation or an interview, and Judge Rochon rejected the Government's effort to detain first and explain later. The court emphasized that petitioner was not claiming a right to perpetual supervision, but "a right not to be redetained without appropriate process," and held that the governing regulations required that "[a] copy of any decision . . . to detain an alien shall be provided to the detained alien," with reasons stated, because failure to provide such notice "thwarts his ability to contest the revocation."

37. Judge Rochon further held that even apart from the regulations, minimal due process required notice and an informal interview, because the "almost nonexistent procedural protections" markedly increased the risk of erroneous deprivation of liberty.

8

38. ***Diallo*** drives the same point home in the § 1231 setting. There, the Government conceded that it could not say Diallo had received "the notice and prompt interview required by 8 C.F.R. § 241.4(l)," and the court rejected the Government's attempt to read § 1231 broadly while stripping away the procedural protections that would ordinarily govern re-detention. Judge Subramanian explained that it "defies common sense" to interpret § 1231 to allow redetention of a person never previously detained under supervision while depriving her of "the procedural safeguards that someone like Diallo would have if the government had only followed its own legal mandates." He then relied on ***Zhu*'s** Mathews analysis, including the recognition that the private liberty interest is weighty, the risk of error is high when protections are "almost nonexistent," and the Government's interests are not undermined by minimal safeguards such as notice and an interview. *Id.* That reasoning applies here whether Respondents later call the custody § 1231 detention, supervision revocation, or reinstatement-based confinement.

39. The same due process defect exists if Respondents later argue that a warrant existed somewhere in the system even though no warrant was presented or disclosed at the time of arrest. The petition should therefore expressly plead, in the alternative, that Petitioner was arrested without any judicial warrant and, on information and belief, without any executed administrative warrant being presented to Petitioner or counsel at the time liberty was first restrained. If a Form I-200, I-205, or other document was generated only during subsequent processing, that later paperwork cannot retroactively create authority that was absent at the moment of seizure. The New York cases repeatedly reject precisely that logic. See ***Zhu***, 798 F. Supp. 3d 400; *Funes*, 2025 WL 3263896; ***Diallo***, No. 25-CV-9909; ***Ndoye***, No. 25-CV-8856. In short, Respondents may not arrest first, separate the detainee from counsel and family, withhold the file, and then search for a legal basis later.

40. Nor may Respondents avoid the procedural problem by claiming that some undocumented internal review occurred. In ***Ndoye***, Judge Broderick construed 8 C.F.R. § 241.4(l) as a unified revocation framework and rejected the Government's repeated attempt to parse the rule in a way that afforded less process than the regulation required. The court explained that when liberty is restrained through revocation of supervision, the regulation entrusts revocation decisions to specified officials and requires

9

the procedures laid out in the regulation as a whole. That matters here because, at the outset of an emergency habeas case, the Government often has not shown who made the decision, whether the person was authorized, what documents were reviewed, or whether the procedural steps required by the regulation were actually followed. The absence of that showing is not a trivial gap. It is one of the reasons the writ issues.

**ICE CLAIMS THAT IT IS DETAINING HIM UNDER SECTION 1231, OR EXPEDITED REMOVAL UNDER 1225, THEN THE FOLLOWING ARGUMENTS APPLY IN THE PETITIONER'S APPLICATION FOR RELEASE**

41. If Respondents claim detention under § 1231 based on a prior removal order, order of supervision, warrant of removal, or reinstatement, the same custody principles apply. At a minimum, Respondents were required to possess and rely upon the operative administrative record, to identify the correct statutory basis for detention, to comply with the governing regulations, and to afford Petitioner constitutionally adequate notice and an opportunity to be heard. Based on the information currently available, those steps were not taken. No valid warrant or reinstatement paperwork has been shown to counsel; no administrative file has been produced; no contemporaneous custody determination has been disclosed; and no meaningful process has been afforded.

42. Petitioner further pleads in the alternative that, if Respondents later contend that Petitioner was on some form of supervision or conditional release, any revocation of that status was unlawful because Petitioner was not given the basic process that the regulations and the Due Process Clause require. As *Funes*, *Zhu*, *Diallo*, and *Ndoye* demonstrate, at minimum that process includes contemporaneous notice of the reasons for redetention and a meaningful opportunity to respond. See *Funes*, No. 25 Civ. 7429, 2025 WL 3263896; *Zhu*, 798 F. Supp. 3d 400; *Diallo*, No. 25-CV-9909; *Ndoye*, No. 25-CV-8856. The Government may enjoy discretion in the immigration context, but it may not dispense with the procedures that cabin that discretion when liberty is at stake.

43. Petitioner also pleads, in the alternative, that if Respondents later assert a prior expedited-removal order as the basis for detention or reinstatement, Respondents must prove the existence of an actual, operative order, not merely an inadmissibility notice or other incomplete form. *Rodriguez-Acurio* demonstrates

10

that where the form's order section is blank, the document is not an order at all. And where the Government cannot demonstrate that the operative order existed and took legal effect, it cannot rely on post-order detention authority. See *Polat*, 2025 U.S. Dist. LEXIS 260802; *Rodriguez-Acurio*, No. 2:25-cv-6065.

44. Petitioner further alleges that, to the extent any statements were obtained from him during the arrest or immediately preceding it, those statements were taken during an unlawful seizure imposed without warrant, without notice of the legal basis for custody, and without disclosure of the records or orders purportedly authorizing that seizure. If Respondents later rely on such statements to establish any element of reinstatement, removability, or detention authority, Petitioner reserves all rights to challenge the admissibility and legal sufficiency of those statements and to seek suppression where appropriate.

45. Finally, if the Respondents' fail to produce the administrative record that itself is highly significant in habeas. The habeas statute requires the respondent to make a return certifying the true cause of detention, and without the underlying administrative file the Court cannot determine whether the statutory requirements for detention were satisfied. Here, too, the absence of the file prevents meaningful testing of whether there was any valid prior order, whether any reinstatement occurred in compliance with 8 C.F.R. § 241.8, whether any warrant was actually operative at the time of arrest, and whether the detention was placed under the correct statutory framework.

46. In sum, Respondents ultimately invoke § 1231, the same principle governs: the Government may not deprive a person of liberty without identifying and proving a lawful statutory basis for custody, without complying with its own regulations, and without constitutionally adequate process. It may not seize first and justify later. It may not rely on an order not produced, a reinstatement not shown, a warrant not presented, or an administrative file not reviewed. And it may not repair those defects through shifting theories after habeas jurisdiction has attached. Under the Supreme Court's due process cases, the Second Circuit's habeas and detention precedents, and the recent decisions of the Southern and Eastern Districts of New York and the District of New Jersey, Petitioner's detention is unlawful unless and until Respondents can prove otherwise with competent, contemporaneous records and procedures they have

11

not yet produced. See *Zadvydas*, 533 U.S. at 690; *Hamdi*, 542 U.S. at 529; *Boumediene*, 553 U.S. at 783; *Velasco Lopez*, 978 F.3d at 850–54; *Hechavarria*, 891 F.3d at 53–55; *Funes*, 2025 WL 3263896; *Zhu*, 798 F. Supp. 3d 400; *Diallo*, No. 25-CV-9909; *Ndoye*, No. 25-CV-8856; *Rodriguez-Acurio*, No. 2:25-cv-6065; *Polat*, Civil Action No. 2:25-cv-16893, 2025 U.S. Dist. LEXIS 260802.

47. Accordingly, Petitioner respectfully alleges that his arrest and detention are unlawful under the Fourth Amendment, the Fifth Amendment, the INA, and the governing regulations; that he is entitled to immediate habeas relief unless Respondents promptly produce the complete administrative record and establish a lawful basis for custody; and that, at minimum, he is entitled to whatever contemporaneous notice, individualized custodial determination, and opportunity to be heard the Constitution and the governing statutory framework require.

## THIS CASE

48. This is an emergency habeas case about a basic constitutional and statutory question. *Can DHS arrest a non-citizen on the street, seize him, search him, and arrest him without probable cause and in violation of the federal detention statutes of the INA?* And can DHS then keep detaining him without a hearing and without complying with statutory and constitutional safeguards?

49. As in many other cases, DHS will likely produce an after-created arrest warrant and claim the arrest was based on it, even though the warrant was generated after the arrest and was not previously issued or approved through the chain of command as the statute and regulations require.

50. The law says that civil immigration detention is a grave deprivation of liberty and that due process requires meaningful safeguards at the moment the Government decides to arrest and detain someone. Courts in this District have repeatedly ordered relief under habeas where ICE detained people without making the individualized assessment that the regulations require, and where ICE tried to justify detention after the fact instead of through contemporaneous process.

51. Petitioner therefore respectfully asks this Court to act now: to prevent transfer, compel disclosure of the key documents, require Petitioner's production before the Court, and order immediate release.

## JURISDICTION AND VENUE

12

52. This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is in federal custody under the color of United States authority and challenges the legality of that custody as unconstitutional and in violation of statute and regulation.

53. The venue is proper in the DISTRICT OF NEW JERSEY because the Petitioner is detained at ICE facilities within this District, and is currently at DELANEY HALL in Newark, NJ. Respondents direct, control, and administer Petitioner's detention and transfer decisions in and from this District.

54. This Court has authority to issue a temporary restraining order and preliminary injunctive relief "as law and justice require," including to prevent transfer that would impair the Court's jurisdiction and ability to order effective habeas relief.

**THE PARTIES**

55. Petitioner is a resident of Monroe, NY.

56. Respondent John Tsoukarius is the Field Director, Enforcement & Removal Operations of ICE, and is a legal custodian of Petitioner.

57. Respondent Todd Lyons is the Acting Director of ICE and is responsible for ICE detention policies and practices.

58. Respondent Markwayne Mullin is the Secretary of the Department of Homeland Security and is responsible for DHS policies and enforcement practices affecting detention

59. Respondent Todd Blanche is the Attorney General of the United States and is sued in her official capacity in connection with the federal custody at issue.

**ARGUMENT**

**CLAIM ONE**

**IF DHS CLAIMS IT IS DETAINING HIM UNDER § 1231, THE PETITIONER'S WARRANTLESS ARREST AND DETENTION WITHOUT A CONTEMPORANEOUS, INDIVIDUALIZED CUSTODY DETERMINATION VIOLATES THE FOURTH AMENDMENT, THE FIFTH AMENDMENT, AND THE IMMIGRATION AND NATIONALITY ACT**

60. If DHS claims that it is detaining him under 1231, we repeat all the arguments made above in the Preface section of this habeas petition.

13

61. If Respondents claim detention under § 1231 based on a prior removal order, order of supervision, warrant of removal, or reinstatement, the same statutory and constitutional custody principles apply. At a minimum, Respondents were required to possess and rely upon the operative administrative record, to identify the correct statutory basis for detention, to comply with the governing regulations, and to afford Petitioner constitutionally adequate notice and an opportunity to be heard. Based on the information currently available, those steps were not taken. No valid warrant or reinstatement paperwork has been shown to counsel; no administrative file has been produced; no contemporaneous custody determination has been disclosed; and no meaningful process has been afforded.

62. Petitioner further pleads in the alternative that, if Respondents later contend that Petitioner was on some form of supervision or conditional release, any revocation of that status was unlawful because Petitioner was not given the basic process that the regulations and the Due Process Clause require. As *Funes*, *Zhu*, *Diallo*, and *Ndoye* demonstrate, at a minimum that process includes contemporaneous notice of the reasons for redetention and a meaningful opportunity to respond. See *Funes*, No. 25 Civ. 7429, 2025 WL 3263896; *Zhu*, 798 F. Supp. 3d 400; *Diallo*, No. 25-CV-9909; *Ndoye*, No. 25-CV-8856. The Government may enjoy discretion in the immigration context, but it may not dispense with the procedures that cabin that discretion when liberty is at stake.

63. Petitioner also pleads, in the alternative, that if Respondents later assert a prior expedited-removal order as the basis for detention or reinstatement, Respondents must prove the existence of an actual, operative order, not merely an inadmissibility notice or other incomplete form. *Rodriguez-Acurio* demonstrates that where the form's order section is blank, the document is not an order at all. And where the Government cannot demonstrate that the operative order existed and took legal effect, it cannot rely on post-order detention authority. See *Polat*, 2025 U.S. Dist. LEXIS 260802; *Rodriguez-Acurio*, No. 2:25-cv-6065.

**CLAIM TWO**

**Detention Under § 1231 Is Unlawful Because The Government Is Relying On A Twenty-Six-Year-Old In Absentia Order That Was Never Received, Remains Subject To Rescission At Any Time, And Cannot Supply A Lawful Basis For Continued Custody**

14

64. The Government's detention theory would argue that Petitioner is presently subject to a lawful, operative, administratively final removal order that can support detention under 8 U.S.C. § 1231. That premise fails here. The alleged order was entered in absentia in 2000. Petitioner did not receive notice of the hearing, did not know the order existed, and therefore never had a meaningful opportunity to appear, appeal, or seek reopening. An in absentia order entered without received notice is not the kind of reliable, lawful final order on which the Government may imprison a person decades later while treating the immigration proceeding as closed.

65. Congress expressly protected against this exact problem. An in absentia order may be entered only if DHS establishes by "clear, unequivocal, and convincing evidence" that written notice was provided and that the person is removable. 8 U.S.C. § 1229a(b)(5)(A). And where the person "did not receive notice," Congress made rescission available "at any time." 8 U.S.C. § 1229a(b)(5)(C)(ii). The same provision further states that filing such a motion "shall stay the removal of the alien pending disposition of the motion by the immigration judge." Id. That statutory structure matters. Congress did not treat a no-notice in absentia order as an ordinary final order immune from later challenge. It treated nonreceipt of notice as a fundamental defect that may be raised without any time limit.

66. The Third Circuit has applied that statute in practical, actual-notice terms. In *Santana Gonzalez v. Attorney General of the United States*, 506 F.3d 274, 277 (3d Cir. 2007), the court held that, when rescission is sought for lack of notice, "the key question . . . is not whether the Immigration Court properly mailed the notice to the alien, but whether the alien actually received the notice." The Third Circuit further held that a strong presumption of delivery applies only to certified mail, while a weaker presumption applies to regular mail, and that the inquiry is "practical and commonsensical rather than rigidly formulaic." Id. at 279–80. The Third Circuit reaffirmed the same rule in *Castillo v. Attorney General of the United States*, 729 F. App'x 233, 235 (3d Cir. 2020), again stating that the "key question" is actual receipt, not merely mailing. ([CaseLaw](CaseLaw))

67. That rule is decisive here. The Government cannot convert a never-received 2000 in absentia order into a present-day detention warrant simply by invoking the word "final." Section 1231 begins only when the removal order "becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). And while the INA defines finality generally by reference to BIA affirmance or expiration of the appeal period, 8 U.S.C. §

15

1101(a)(47)(B), that general rule presupposes a lawful opportunity to participate in the proceeding and seek review. It does not answer the separate due-process and statutory-notice question presented here: whether DHS may imprison Petitioner today based on an in absentia order he never received and may still move to rescind "at any time." (Legal Information Institute)

68. The Supreme Court's recent decision in *Campos-Chaves v. Garland*, 602 U.S. ___ (2024), does not help the Government if Petitioner never received the hearing notice. *Campos-Chaves* addressed cases where the noncitizens received later notices specifying the time and place of hearing. It did not eliminate § 1229a(b)(5)(C)(ii)'s protection for a person who "did not receive notice" at all. (Justia Law)

69. Nor can the Government justify detention under § 1231 by pointing to administrative convenience or the age of the order. In *Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001), the Supreme Court held that § 1231 detention is limited by the statute's purpose: securing removal. The Court explained that the habeas court must ask whether detention exceeds the time reasonably necessary to accomplish removal, and that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." Id. at 699–700. That principle applies with special force where the supposed removal order is not merely old, but procedurally defective and subject to reopening and rescission because notice was never received. (Justia Law)

70. The District of New Jersey's recent immigration habeas decisions confirm that § 1231 is not a blank check for detention whenever DHS invokes an old removal order. In *Patel v. Bondi*, Civ. No. 25-16218 (KMW), (D.N.J. Nov. 26, 2025), Judge Williams granted habeas and ordered release under supervision where the Government failed to show reasonably foreseeable removal, emphasizing that repeated failure to effect removal and lack of evidence of foreseeable travel-document issuance defeated continued detention. (Justia Law) In *Xu v. Bondi*, Civ. No. 25-16274 (BRM), (D.N.J. Jan. 6, 2026), Judge Martinotti likewise granted a § 2241 petition challenging continued detention under an old removal order. (Justia Law) And in *Souza-Ferreira v. Mayorkas*, Civ. No. 25-18142 (JXN) (D.N.J. Mar. 20, 2026), Judge Neals granted habeas to a petitioner subject to a final in absentia removal order, reiterating that once removal is no longer reasonably foreseeable, detention is no longer authorized under § 1231.

16

71. Those cases support release here, but this case is even stronger. In *Patel*, *Xu*, and *Souza-Ferreira*, the core problem was that removal was not reasonably foreseeable. Here, the Government has an additional problem: the very order it invokes was entered in absentia without received notice and remains subject to rescission at any time under § 1229a(b)(5)(C)(ii). That means the Government is not merely detaining Petitioner under an old order; it is detaining him under an order whose legal foundation is actively disputed and whose enforceability depends on a notice question Congress made reopenable without any deadline.

72. The proper remedy is release. If the Government believes Petitioner is removable, it may litigate that issue in immigration court after proper notice and lawful process. What it may not do is imprison him now under § 1231 based on a 2000 in absentia order he never received, while denying him the very statutory remedy Congress created for that situation. At minimum, the Court should hold that § 1231 detention is unlawful on this record, order Petitioner released under appropriate conditions of supervision, and prohibit re-detention under the same defective order unless and until the immigration court determines, after proper proceedings, that the order remains valid and enforceable.

**THE RECENT DISTRICT OF NEW JERSEY CASES CONFIRM THAT DHS CANNOT USE AN OLD REMOVAL ORDER AS A SHORTCUT TO DETENTION WHERE THE ORDER'S VALIDITY, ENFORCEABILITY, NOTICE, OR REMOVABILITY EFFECT IS UNCERTAIN.**

73. The District of New Jersey has repeatedly rejected the Government's effort to detain people first and justify the detention later by invoking old removal orders. Those cases show a consistent rule: the mere existence of an old order does not end the habeas inquiry. The Government must show that the order is legally operative, that § 1231 actually applies, that removal is reasonably foreseeable, and that the person's detention is authorized now.

74. In *Munoz-Saucedo v. Pittman*, Civ. No. 25-2258 (CPO), 789 F. Supp. 3d 387 (D.N.J. June 24, 2025), the petitioner had a final removal order from 2022, but ICE had already released him because removal could not be accomplished. Judge O'Hearn ordered release because the Government could not show that removal was significantly likely in the reasonably foreseeable future. That case is important here

17

because it rejects the idea that DHS may simply point to an old order and detain indefinitely.

75. The same principle controlled *Patel v. Bondi*, Civ. No. 25-16218 (KMW) (D.N.J. Nov. 26, 2025), where the petitioner had a removal order dating back to 2015. ICE had previously released him because India would not issue travel documents, then re-detained him years later at a routine check-in. Judge Williams ordered release because DHS still could not show reasonably foreseeable removal.

76. In *Xu v. Bondi*, Civ. No. 25-16274 (BRM) (D.N.J. Jan. 6, 2026), the order was even older: a 2011 removal order. The petitioner had complied with supervision for approximately fourteen years before ICE re-detained him. Judge Martinotti ordered release, holding that the Government had not shown a significant likelihood of removal in the reasonably foreseeable future.

77. *V.S.P.H. v. Soto*, Civ. No. 25-18835 (SDW) (D.N.J. Feb. 10, 2026), is especially useful for an old-order fact pattern. There, the petitioner had a 2005 removal order and had lived for years under an order of supervision. ICE re-detained her at a routine supervision check-in. Judge Wigenton ordered release, emphasizing that the Government had not shown a violation of supervision, had not properly justified revocation, and had not shown a lawful basis for renewed detention. The case supports the argument that a decades-old order does not itself authorize new detention without a present lawful basis.

78. In *Delcid-Santos v. Soto*, Civ. No. 26-1382 (SDW) (D.N.J. Mar. 6, 2026), the petitioner had a 2012 removal order that was later reinstated. Judge Wigenton accepted that § 1231 applied, but still ordered release because the removal period had expired and removal was not reasonably foreseeable while protection proceedings remained pending. The court's reasoning is useful here because even where DHS can point to a prior or reinstated order, detention still must be tied to an actual, lawful, foreseeable removal.

79. In *Saquic Cahuex v. Noem*, No. 26-cv-02339-ESK (D.N.J. Mar. 17, 2026), Judge Kiel ordered release under § 1231 where the Government submitted "no evidence that petitioner's removal is reasonably foreseeable" and held that the petitioner's community ties, DHS's failure to support detention, and likely delay warranted release on supervision. That language is directly useful: DHS must produce evidence, not assumptions, and release under supervision is the statutory remedy.

18

80. In *Souza-Ferreira v. Mayorkas*, Civ. No. 25-18142 (JXN) (D.N.J. Mar. 20, 2026), the petitioner had an old in absentia removal order from 2017, had later reentered, and was detained under post-order authority. Judge Neals ordered release because the Government could not show concrete removal efforts or a significant likelihood of removal. This is one of the best analogies where DHS relies on an in absentia order as the basis for detention.

81. In *Liu v. Bondi*, No. 26-cv-03329-ESK (D.N.J. Apr. 15, 2026), Judge Kiel ordered release where DHS relied on a long-final removal order, but the record did not show that removal was presently lawful or reasonably foreseeable. That case reinforces the same point: § 1231 detention depends on more than the paper existence of an old order.

82. And in *Leon De Lopez v. Soto*, Civ. No. 26-2826 (JXN) (D.N.J. Mar. 31, 2026), Judge Neals ordered release where the Government relied on the wrong detention theory and attempted to justify custody after the fact. The court ordered that the petitioners be "RELEASE[D] . . . from immigration detention" under the same prior conditions. That case is useful because it rejects post hoc detention theories and confirms that release is appropriate where the Government's asserted statutory basis is wrong.

83. Together, these cases make the Government's position untenable here. Petitioner's case involves an even older and weaker detention predicate than many of those cases. The Government relies on an in absentia order from 2000. Petitioner did not receive notice of the hearing. He did not know the order existed. He therefore had no meaningful opportunity to appear, appeal, or move to reopen at the time. Under 8 U.S.C. § 1229a(b)(5)(C)(ii), an in absentia order entered without received notice may be rescinded "at any time." That means the order is not a stable, reliable, or unchallengeable predicate for imprisonment. At minimum, it is subject to a live statutory attack that Congress expressly preserved without any deadline.

84. The Government therefore cannot use § 1231 as a shortcut around due process. Section 1231 assumes a lawful and operative final order. It does not authorize ICE to detain a person on the basis of a decades-old in absentia order that he never received and may still move to rescind. The recent District of New Jersey cases show that courts do not accept old removal orders as self-executing detention warrants.

19

Where DHS cannot show that the order lawfully supports present detention, that removal is actually foreseeable, and that detention is necessary to accomplish removal, habeas release is the proper remedy.

85. Here, release is especially warranted because Petitioner is not asking this Court to decide his ultimate removability. He is asking only that the Government not be permitted to imprison him under § 1231 based on a 2000 order entered without received notice. If DHS believes the order remains valid, it may litigate that issue in immigration court after Petitioner has a fair opportunity to move to reopen and rescind. But until then, continued detention is unlawful.

### CLAIM THREE

### PETITIONER'S WARRANTLESS SEIZURE AND ARREST VIOLATED THE FOURTH AMENDMENT, 8 U.S.C. § 1357(a)(2), AND THE GOVERNING IMMIGRATION ARREST REGULATIONS

### The Fourth Amendment Applies Fully to Interior Civil Immigration Arrests

86. The Fourth Amendment applies fully to civil immigration arrests in the interior of the United States. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1043 (1984). The Second Circuit has recognized that "[t]he Fourth Amendment's protections extend to all persons within the United States, including aliens." *Almeida-Amaral v. Gonzales*, 461 F.3d 231, 234 (2d Cir. 2006). So warrantless civil immigration arrests are limited by both the Constitution and the INA.

87. That means the DHS cannot seize first and explain later. If ICE officers seized Petitioner at a USCIS appointment without presenting a warrant, without articulating probable cause, and without identifying a lawful basis for the seizure at the time, the arrest was unreasonable under the Fourth Amendment and outside the statute. See *Dunaway v. New York*, 442 U.S. 200, 208–09 (1979); *Beck v. Ohio*, 379 U.S. 89, 91, 96 (1964).

88. Because the initial seizure was unlawful, the detention that followed is unlawful too.

### Congress Created a Warrant-First Rule for Interior Immigration Arrests

89. Congress did not create a free-floating power for immigration officers to seize people in the interior and sort out the authority later. The structure of the arrest statutes matters. Under 8 U.S.C. § 1226(a), a person in the interior ordinarily is arrested "[o]n a warrant issued by the Attorney General." The same

20

section then provides for detention, bond, or conditional parole. So the normal model is arrest on a warrant first, followed by custody procedures.

90. The regulations confirm that model. Under 8 C.F.R. § 236.1(b)(1), a person may be arrested and taken into custody under a Form I-200 warrant, and that warrant may be issued only by the officers listed in 8 C.F.R. § 287.5(e)(2), and served only by the officers listed in § 287.5(e)(3). In short, the regulations require advance issuance by designated officers and advance authorization before liberty is restrained.

91. The Supreme Court described the same structure in *Arizona v. United States*. There, the Court explained that Congress created a "full set of standards" governing immigration arrest authority and that the no-warrant authority is "more limited." 567 U.S. 387, 407–08 (2012). Officers may arrest without a warrant only if they have reason to believe the person is removable and likely to escape before a warrant can be obtained. *Id.* So the warrantless power is the exception, not the default.

### The Administrative-Warrant Scheme Requires Prior Authorization, Not Later Papering

92. The warrant rules are not minor technicalities. They are part of the lawful method for making interior immigration arrests. Before an arrest on a warrant, DHS regulations require prior issuance of Form I-200 by a designated official under 8 C.F.R. § 287.5(e)(2). That authority is concentrated in supervisory and specially delegated officers. The point is to require review before arrest, not afterward.

93. The regulations also limit who may make a warrantless arrest at all. Under 8 C.F.R. § 287.5(c)(1), only designated officers may exercise that power. And 8 C.F.R. § 287.8(c)(2) says that such officers may arrest without warrant only if they have reason to believe the person is removable and "is likely to escape before a warrant can be obtained." The same regulation adds that a warrant "shall be obtained in every instance where the person is not likely to escape before a warrant can be obtained." 8 C.F.R. § 287.8(c)(2)(ii). That language is mandatory.

94. The regulations also require basic notice at the time of arrest. The officer must identify himself or herself as an immigration officer and state that the person is under arrest and the reason for the arrest. 8 C.F.R. § 287.8(c)(2)(iii). Where officers do not show a warrant, do not state the basis for arrest, and do not comply with these rules, the arrest is not merely sloppy. It is unlawful.

21

95. That is why later-issued paperwork cannot save an arrest that was unlawful when it happened. The sequence matters. The warrant must come first. A later I-200 does not prove compliance. It proves the opposite.

### A Warrantless Immigration Arrest Required Probable Cause and a Real Escape-Risk Basis

96. Even if there were a lawful initial encounter, the DHS still needed probable cause before turning it into an arrest. The constitutional rule is basic: probable cause must exist "at the moment the arrest was made." *Beck*, 379 U.S. at 96. Officers cannot detain first and then use later-acquired facts to fill in the missing basis.

97. Congress wrote that same rule into 8 U.S.C. § 1357(a)(2). That section allows a warrantless arrest only when the officer has "reason to believe" the person is removable and "is likely to escape before a warrant can be obtained." Courts have long treated "reason to believe" in this context as equivalent to probable cause. See *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). The Second Circuit's reasoning is consistent. In *Ojeda-Vinales v. INS*, the court explained that officers may investigate first, then arrest once probable cause exists, not the other way around. 523 F.2d 286, 287–88 (2d Cir. 1975).

98. The second part of § 1357(a)(2) matters just as much. Even if probable cause existed, officers still could not make a warrantless arrest unless they also had reason to believe the person was likely to escape before a warrant could be obtained. Congress used "and," not "or." The regulations repeat that same structure and say a warrant "shall be obtained" whenever the person is not likely to escape before one can be secured. 8 C.F.R. § 287.8(c)(2)(ii).

99. So if ICE had neither a valid preexisting warrant nor concrete facts showing probable cause and escape risk at the moment of arrest, the seizure was unlawful under both the Fourth Amendment and the statute.

### Later Paperwork Cannot Cure the Defect

100.     DHS may try to rely on facts learned after arrest or on later-issued documents. But that argument fails. Beck holds that an arrest is judged by what officers knew "at the moment the arrest was made." 379 U.S. at 96. And *United States v. Di Re* holds that an arrest "is good or bad when it starts and does not change character from its success." 332 U.S. 581, 595 (1948).

22

101.    That rule is even stricter here because the regulations already tell ICE what to do. If there is no escape risk, get a warrant first. If DHS  instead says this was a warrantless arrest, then it must prove that both elements of § 1357(a)(2) existed at the time of arrest. It cannot switch theories in litigation to rescue a defective seizure.

102.    The post-arrest regulations do not help the DHS either. Under 8 C.F.R. § 287.3, a person arrested without a warrant must be examined by an officer other than the arresting officer unless no other qualified officer is available, and a custody decision must then be made. Those are safeguards for an already lawful warrantless arrest. They do not create arrest authority where none existed.

### The Record Alleged Here Shows Noncompliance with the Required Arrest Protocol

103.    Applying the law to the facts alleged here shows why the arrest was unlawful. First, ICE did not proceed on a valid administrative warrant issued in advance by an authorized officer under 8 U.S.C. § 1226(a), 8 C.F.R. § 236.1(b)(1), and 8 C.F.R. § 287.5(e)(2). Petitioner was seized at a government building without any warrant being shown.

104.    Third, the officers lacked probable cause to believe Petitioner was removable at the moment of arrest. The Constitution and § 1357(a)(2) do not allow officers to seize first and determine legal status later. *Beck*, 379 U.S. at 96; *Ojeda-Vinales*, 523 F.2d at 287–88.

105.    Fourth, ICE did not satisfy the separate "likely to escape" element. Nothing suggests officers could not have used the normal warrant process. To the contrary, the regulations assume they should have done so unless there was real exigency.

106.    And fifth, because the arrest was made without a warrant and outside the narrow conditions of § 1357(a)(2), the seizure was not just unreasonable. It was ultra vires. Congress withheld arrest authority unless those conditions were met.

### CLAIM FOUR

### FAILURE TO FOLLOW MANDATORY DETENTION REGULATIONS AND PROCEDURES RENDERS CUSTODY UNLAWFUL UNDER ACCARDI

107.     Under *Accardi v. Shaughnessy*, 347 U.S. 260 (1954), an agency must follow its own binding regulations, especially where those regulations protect liberty or other important individual rights. When the Government fails to follow those mandatory procedures, its action is unlawful and cannot support continued detention. *Id.* at 267–68.

108.     The immigration detention scheme contains mandatory procedural safeguards governing arrest, processing, and custody determinations. These include 8 U.S.C. §§ 1226 and 1357 and regulations such as 8 C.F.R. §§ 236.1 and 287.3. Where ICE does not follow those procedures, particularly in the immediate aftermath of a warrantless arrest, detention is unlawful from the start and cannot be saved by post hoc rationalizations.

109.     The Second Circuit has enforced *Accardi* in the immigration context for decades. In *Montilla v. INS*, the court held that agency failure to follow its own regulations requires invalidation of the resulting action where those regulations protect fundamental rights. 926 F.2d 162, 166–69 (2d Cir. 1991). That principle applies here. The regulations governing arrest and detention are not optional internal housekeeping rules. They are part of the legal framework that protects liberty.

110.     The recent district cases apply that same idea in the custody setting. In *Lopez Benitez*, Judge Ho held that "before the Government may exercise such discretion to detain a person," § 1226(a) and 8 C.F.R. § 1236.1(c)(8) "require ICE officials to make an individualized custody determination." 795 F. Supp. 3d at 490 . In *Kelly*, Judge Torres held that ICE had to permit the detainee to demonstrate that release would not pose danger or flight risk, and found it undisputed that Kelly was not allowed to do so. *Kelly*, 2025 WL 2381591, at *3–4 . In *Huamani*, Judge Liman granted release where there was no process before re-detention. *Huamani*, 2025 WL 3079014, at *8–9 . In *Gopie*, Judge Bulsara held that the custody determination was made after arrest, not before or contemporaneously, and that this violated basic due process requirements. *Gopie*, No. 25-CV-05229 (SJB) (E.D.N.Y. Nov. 13, 2025) .

111.     These cases show the same thing. The regulations require timely, individualized custody determinations grounded in lawful authority. Failure to comply with those rules makes detention procedurally defective and constitutionally suspect.

24

**The Regulations Require Process at the Time of Arrest, Not Later**

112.　　　Under 8 C.F.R. § 287.3(c), a person arrested without warrant must be examined without unnecessary delay and advised of the reasons for arrest and the right to counsel. Under 8 C.F.R. § 236.1(c), a custody determination must then be made as to detention or release. These are not loose suggestions. They are mandatory procedural safeguards governing the deprivation of liberty.

113.　　　That is why post hoc explanations do not work. DHS cannot ignore its own rules at the time of arrest and then attempt to cure the violation later through a later memorandum, later form, later warrant, or later bond proceeding. Under *Accardi*, the agency must follow the procedures it prescribed when it acts.

114.　　　This point has special force in a case involving 8 U.S.C. § 1357(a)(2). That section gives officers a narrow power to arrest without warrant only when they have reason to believe the person is removable and likely to escape before a warrant can be obtained. If officers make a warrantless arrest and then fail to follow the regulations that govern immediate processing and custody decisions, the statutory and regulatory prerequisites for detention were never satisfied.

**Application Here**

115.　　　Here, Respondents failed to comply with the mandatory procedures governing Petitioner's arrest and custody determination. Petitioner was subjected to a warrantless arrest without compliance with 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.3. No contemporaneous custody determination was made consistent with 8 C.F.R. § 236.1. No lawful process was provided at or before the deprivation of liberty.

116.　　　These are not technical errors. They go to the heart of DHS's claimed authority to detain. The regulations exist to make sure detention decisions are made lawfully, deliberately, and with minimum safeguards. When those safeguards are ignored, detention is unlawful under *Accardi* and cannot stand.

117.　　　Nor can Respondents cure these violations after the fact. A later-issued document, a delayed custody decision, or a new litigation theory cannot retroactively validate an arrest and detention that were unlawful when they occurred. The law requires compliance at the time of deprivation, not reconstruction later.

118.     Accordingly, because Respondents failed to follow the mandatory procedures governing arrest and custody determinations, Petitioner's detention is unlawful under *Accardi*, violates the governing statutes and regulations, and violates the Due Process Clause. Where ICE fails to comply with its own binding rules governing arrest and detention, custody cannot stand. Habeas relief is required.

**<u>CLAIM FIVE</u>**

**IF RESPONDENTS CANNOT PRODUCE THE ADMINISTRATIVE RECORD DEMONSTRATING LAWFUL AUTHORITY FOR PETITIONER'S ARREST AND DETENTION, THE COURT MUST GRANT THE WRIT.**

**<u>Petitioner Requests an Order Directing Expedited Production of DHS Custody and Administrative Records</u>**

119.     Respondents cannot justify Petitioner's continued dention without producing the administrative record that purportedly authorizes his arrest and incarceration. In habeas corpus proceedings, *the Government bears the burden of demonstrating the legal authority for a person's detention*. The writ of habeas corpus exists precisely to assess whether the Executive Branch possesses lawful authority to restrain an individual's liberty. Where the Government cannot demonstrate that authority with competent evidence, the detention cannot stand.

120.     If Respondents cannot produce the administrative record demonstrating lawful authority for Petitioner's arrest and detention, the Court must grant the writ.  At a minimum, Respondents should be ordered to produce the complete administrative record—including the A-file, any alleged removal order, any reinstatement determination, and any custody determination—so that the Court may determine whether the detention complies with federal law and the Constitution. Absent such a showing, Petitioner's continued detention is unlawful and he must be released.

121.     Although habeas proceedings do not authorize plenary civil discovery, they do require <u>a *real return grounded in the actual record—not a curated narrative constructed by the detaining authority*</u>. The governing statutes make that obligation explicit. Under 28 U.S.C. § 2243, the writ "shall be returned within three days unless for good cause additional time is allowed," and the respondent must certify "the true cause of the detention." 28 U.S.C. § 2243 (emphasis added). Section 2241(c)(3) authorizes relief where a person is "in custody in violation of the Constitution or laws … of the United States," and §

26

2243 further commands that the Court "summarily hear and determine the facts" and "dispose of the matter as law and justice require."

122.    These statutory commands presuppose production of the *actual custody record*. A declaration that paraphrases ICE paperwork while withholding the underlying documents is not a return stating the "true cause" of detention within the meaning of § 2243. Habeas review cannot proceed on summaries, characterizations, or post hoc justifications; it requires the record itself so that the Court—not the Government—can determine the legality of detention.

123.    That principle is longstanding. The Supreme Court has made clear that the Government may not defeat habeas review through conclusory assertions. In *Walker v. Johnston*, 312 U.S. 275, 284–87 (1941), the Court rejected reliance on unsupported official representations and held that courts must examine the underlying facts where detention is challenged. Habeas corpus "cuts through all forms and goes to the very tissue of the structure," requiring production of the factual basis for detention so the court may determine its legality. Id. at 284. That command applies with full force here.

124.    Courts Require Production of The Underlying Detention File - Not Summaries

125.    Consistent with §§ 2241 and 2243, courts have repeatedly required Respondents to produce the actual documentary record of detention where its legality is challenged.

126.    In *Covelli-Chaparro v. Bondi*, No. 2:26-cv-00118 (E.D.N.Y. Jan. 13, 2026), the court ordered a supplemental submission and required Respondents to confirm that they had provided "all documents demonstrating why Petitioner's detention in ICE custody is lawful." That directive reflects the core requirement that habeas review must be grounded in the full evidentiary record, not selective disclosures.

127.    Similarly, in *Minarcaja Concha v. Lyons*, No. 2:25-cv-06695 (E.D.N.Y. Dec. 10, 2025), the court required Respondents to file a detailed supplemental submission addressing the timing, location, and conditions of detention, including records relating to confinement at 535 Federal Plaza—such as sleeping conditions, access to food, medical care, and counsel. The court did not accept generalized assertions; it required the underlying factual record.

27

128.     In *Hernández Lazo v. Noem*, No. 2:25-cv-06639 (E.D.N.Y. Dec. 10, 2025), the court ordered

Respondents to produce specific documentary materials, including records related to the petitioner's

immigration status (there, TPS termination documents), confirming that habeas courts may compel

production of discrete records necessary to adjudicate the legality of detention.

129.     And in *Ulloa Montoya v. Bondi*, No. 2:25-cv-06363 (E.D.N.Y. Nov. 24, 2025), the court—while

granting TRO relief—directed Respondents to produce *"all immigration forms and records referenced"*

in the Government's own submission, recognizing that habeas review cannot proceed where the

Government selectively cites documents but withholds them from the Court.

130.     Together, these cases establish a consistent rule: when detention is challenged, Respondents must

produce the underlying file that purportedly justifies that detention.

131.     <u>The Required Return Includes the Full Arrest and Custody Record</u>

132.     To satisfy §§ 2241 and 2243, Respondents must file a complete and non-selective return that

includes the full arrest and custody record, including but not limited to:

> Form I-200 (warrant of arrest), if any;
> Form I-213 (Record of Deportable/Inadmissible Alien);
> Form I-286 (Notice of Custody Determination);
> Forms I-220A or I-220B (release or supervision documents);
> Any detainer, booking, or intake records;
> Any custody classification or custody review determinations;
> Any supervisory approvals, revocations, or policy-based directives;
> Any documentation reflecting the statutory basis invoked for detention;
> Any records reflecting when, how, and by whom the custody decision was made.

This is not discovery—it is the *minimum record necessary* for the Court to "determine the facts" as § 2243

requires.

### ***Without The Record, The Court Cannot Discharge Its Statutory Duty***

133.     Absent production of the underlying file, the Court is left with nothing more than the

Government's characterization of its own authority. That is precisely what habeas review forbids.

Section 2243 requires the Court to determine the facts—not to accept the Government's account of

them.

134.     Where, as here, the legality of the arrest, the existence (or absence) of a warrant, the timing of

any custody determination, and the statutory basis for detention are all in dispute, the record itself is the case. Without it, meaningful judicial review is impossible.

135.    Courts have long recognized that when a party fails to produce evidence within its control that would naturally be expected to support its position, an adverse inference may be drawn that the evidence would not support that party's claims. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108–09 (2d Cir. 2002). That principle applies with particular force in habeas proceedings, where the Government alone possesses the detention record.

### Expedited Document Production Is Required

136.    Finally, the statute imposes a compressed timeline. Section 2243 requires a return within three days absent good cause. That timeline reflects Congress's judgment that unlawful detention must be addressed promptly—not after prolonged delay.

137.    Accordingly, the Court should order Respondents to:

a) File a complete return within the timeframe required by § 2243;
b) Produce the full, unredacted custody and arrest record described above; and
c) Certify that the production includes all documents relied upon or referenced in support of detention.

Only with that record can the Court fulfill its statutory obligation to "summarily hear and determine the facts" and "dispose of the matter as law and justice require."

### CLAIM SIX

### REQUEST FOR ATTORNEYS' FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT

138.    Petitioner respectfully requests that this Court expressly preserve Petitioner's right to seek an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, should Petitioner prevail in this habeas corpus proceeding or obtain the relief requested herein through this Temporary Restraining Order or subsequent order of the Court.

139.    EAJA provides that a prevailing party in a civil action against the United States is entitled to an award of attorneys' fees and costs unless the government's position was substantially justified or special circumstances would make an award unjust. See 28 U.S.C. § 2412(d)(1)(A).Immigration habeas corpus

29

proceedings constitute "civil actions" within the meaning of EAJA, and federal courts in this District have recognized that noncitizens who obtain relief from unlawful detention—including release, termination of custody, or injunctive relief—qualify as prevailing parties for purposes of EAJA where the government's conduct is not substantially justified.

140.    Here, Petitioner has been subjected to an unlawful seizure and detention without statutory authority and in violation of the Due Process Clause of the Fifth Amendment. The government's actions necessitated the immediate filing of this emergency habeas petition and application for a Temporary Restraining Order to prevent irreparable harm, including continued unlawful detention and the risk of transfer beyond this Court's jurisdiction.

141.    Under these circumstances, the government's position lacks substantial justification, and Petitioner should not bear the financial burden of vindicating fundamental constitutional rights. Accordingly, Petitioner respectfully requests that this Court's Temporary Restraining Order expressly provide that nothing in the Court's order shall be construed to waive or limit Petitioner's right to seek attorneys' fees and costs under EAJA, and that Petitioner may move for such fees upon prevailing in this action or obtaining the relief sought, including release from custody or other injunctive relief ordered by the Court.

<strong><u>REQUEST FOR RELIEF</u></strong>

Wherefore, Petitioner respectfully requests that this Court Order the Respondents to Show Cause pursuant to 28 U.S.C. § 2243 why a Temporary Restraining Order should not remain in effect pending swift adjudication of the habeas petition:

a) Prohibiting Respondents from transferring Petitioner outside this District absent further order of this Court

b) directing Respondents to provide reasonable and timely access to counsel, including meaningful and confidential in-person legal visitation;

c) directing Respondents to file, within forty-eight (48) hours, a full return certifying the statutory and factual basis for detention pursuant to 28 U.S.C. § 2243; requiring production, within forty-eight (48) hours of this Order, of all custodial and administrative documents supporting detention, as well as all DHS and ICE custody, detention, and administrative records, with appropriate relief for noncompliance;

d) producing Petitioner forthwith before this Court as necessary to effectuate meaningful habeas review; and upon adjudication of the Petition, granting the writ of habeas corpus and ordering Petitioner's immediate release from unlawful detention;

e) awarding reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d), should Petitioner prevail in this action;

f) ordering that Petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where Respondents will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a), that Petitioner be "entitled to release from the unlawful restrictions on his liberty which means, in the circumstances here, restoration of... the status quo ante." *Khabazha v. United States Immigr. & Customs Enf't*, No. 25-cv-5279, 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (ordering government release petitioner from "restrictions on his liberty imposed as a result of his unlawful [detention]... including the ankle monitor and reporting requirements") and "an injunction barring deprivation [of any] of the [Petitioner's] rights without the requisite procedural protections." *Id.* See *Ccorihuaman v. Genalo* No. 26-cv-554 (E.D.N.Y. Feb 6, 2026) and

g) ordering that Respondents shall return to Petitioner all personal property belonging to Petitioner that was seized at the time of detention and that is currently in their custody, possession, or control, whether maintained directly by Respondents or by any contracted or affiliated facility, and that such property shall be returned in the same condition as it existed immediately prior to Petitioner's detention; and

h) Granting such other and further relief as this Court deems just and proper.


Respectfully submitted,

s/ S. Michael Musa-Obregon

S. Michael Musa-Obregon, Esq.

MUSA-OBREGON LAW P.C.
140 Grand Street, Suite 307
White Plains, NY 10601
michael@musa-obregon.com
718-803-1000
May 18, 2026
New York, NY

31

**<u>VERIFICATION BY SOMEONE ACTING ON THE PETITIONER'S
BEHALF PURSUANT TO 28 U.S.C.§ 2242</u>**

I am submitting this verification on behalf of the Petitioner because I am one of the Petitioner's attorneys. I have received this information from law firm staff members, the office file, counsel's investigations, and the Petitioner, who has granted his lawyers permission to discuss the events described in this Petition with his family. On the basis of this understanding, I hereby verify that the statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

32

| Dated: May 18, 2026 | BY:<br><br>*S. Michael Musa-Obregon*<br><br><br>S. Michael Musa-Obregon |
| --- | --- |

## CERTIFICATE OF SERVICE

I certify that on May 18, 2026, I caused the foregoing Petition, Emergency Motion, and Order to Show Cause to be served by electronic mail and certified mail by US POSTAL SERVICE on the United States Attorney's Office for the DISTRICT OF NEW JERSEY, Civil Division, and by electronic mail and by certified mail US POSTAL SERVICE on counsel for Respondents, and I further caused service on Respondents in their official capacities via the U.S. Attorney as permitted by applicable rule.

*s/ S. Michael Musa-Obregon*
S. Michael Musa-Obregon, Esq.
MUSA-OBREGON LAW P.C.

33

140 Grand Street, Suite 307
White Plains, NY 10601
 michael@musa-obregon.com
718-803-1000
New York, NY