UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                    :

**JOSE WILLIAMS ORELLANA LAINEZ**,

                      Petitioner,

          – against –

**TODD BLANCHE**, **MARKWAYNE
MULLIN**, **KEN GENALO**, **RAUL
MALDONADO**, and **TODD LYONS**,

                    Respondents.

------------------------------------------------------------------ X

**MEMORANDUM DECISION
AND ORDER**

26-CV-3103 (AMD)

**ANN M. DONNELLY**, United States District Judge:

On May 14, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested and detained the petitioner, who is currently being held in the Metropolitan Detention Center ("MDC") in Brooklyn, New York.  (ECF No. 12-1 ¶¶ 15, 20.)  The petitioner seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241 (ECF No. 9), and moves for a temporary restraining order to stop the government from transferring him out of this district (ECF No. 10).  The Court denies the petition and the motion, as explained below.

## BACKGROUND[1]

The petitioner is a citizen of Honduras.  (ECF No. 9 ¶ 1.)  He entered the United States without inspection and was identified by the police at a vehicle stop in Texas on March 20, 2012. (ECF No. 12 at 1.)  On the same day, ICE issued a Notice and Order of Expedited Removal,

---

[1] The Court bases the discussion of the facts, which are undisputed unless otherwise noted, on the parties' submissions, including exhibits.  *See Hyppolite v. Noem*, No. 25-CV-4304, 2025 WL 2829511, at *2 n.1 (E.D.N.Y. Oct. 6, 2025); *Munoz Materano v. Arteta*, No. 25-CV-6137, 2025 WL 2630826, at *1 n.1 (S.D.N.Y. Sept. 12, 2025).

1

charging the petitioner as inadmissible pursuant to 8 U.S.C. 1182(a)(7)(A)(i)(I). (*Id.* at 1–2.) On April 9, 2012, ICE served the petitioner with a Notice to Alien Ordered Removed/Departure Verification (Form I-296), finding him inadmissible and prohibiting him from returning or trying to return to the United States for five years from the date of his departure. (*Id.* at 2.) He was removed to Honduras on an ICE charter flight that day. (*Id.*) He re-entered the United States on February 6, 2014. (ECF No. 12-5 at 2.) On February 7, 2014, the Department of Homeland Security ("DHS") issued a Notice of Intent/Decision to Reinstate Prior Order (ECF No. 12-5), a Warning to Alien Ordered Removed or Deported (ECF No. 12-6), and a Warrant of Removal/Deportation based on its reinstatement of the 2012 removal order (ECF No. 12-7). The petitioner was removed to Honduras on February 12, 2014, and was prohibited from returning to the United States for 20 years. (ECF No. 12 at 2; ECF No. 12-6 at 2.)

According to the government, on May 14, 2026, ICE officers saw the petitioner get into the driver's side of a car, outside an "intended target['s]" residence. (ECF No. 12 at 2.) ICE officers "in high visibility police markings" approached the car, "which had tinted windows," and asked the petitioner to identify himself, open the window, and open the door. (*Id.*) The petitioner did not comply, and "remained inside the vehicle for several minutes." (ECF No. 9 ¶¶ 13.) At that point, an officer broke the car window. (*Id*. ¶ 15.) The petitioner gave the officer a New York State driver's license. (ECF No. 12 at 2.) The officers did an "on the scene" records check, which revealed that the petitioner had been removed from the United States twice. (*Id.*) ICE arrested him without a warrant, because it "determined he was flight risk and was likely to abscond before a warrant could be obtained based on his two prior removal orders, his unlawful entry into the United States without inspection, as well as his limited ties to the community." (ECF No. 12-1 ¶ 15.)

ICE initially took the petitioner to the ICE Newburgh Sub Office, and then to 26 Federal Plaza in Manhattan pending placement at a detention facility. (*Id.* ¶ 18.) He was then transferred to the Delaney Hall Detention Facility in Newark, New Jersey, and finally to the MDC. (*Id.* ¶¶ 15, 18–20.) ICE reinstated the 2012 removal order by completing a Notice of Intent/Decision to Reinstate Prior Order on the day the petitioner was arrested. (*Id.* ¶ 16; ECF No. 12-10.)

The petitioner filed a writ of habeas corpus on May 18, 2026. (ECF No. 1.) The petition was transferred to this Court on May 22, 2026, and on the same day, the Court directed the petitioner to file an amended petition that included additional information about his detention. (*See ECF Order dated May 22, 2026.*) The petitioner filed an amended petition on May 27, 2026, and the next day, the Court ordered the government to show cause why the petition should not be granted. (*See ECF Order dated May 28, 2026.*) In that order, the Court enjoined the government from transferring or removing the petitioner to preserve its jurisdiction pending a ruling on the petition. (*Id.*) The government responded to the order to show cause on June 1, 2026. (ECF No. 12.) The petitioner filed a reply on June 4, 2026. (ECF No. 13.)

According to the government, temporary travel documents for the petitioner "will be quickly and electronically procured" to remove the petitioner to Honduras, and the Court's Order enjoining the government from transferring the petitioner is the "sole impediment to removal." (ECF No. 12-1 ¶ 21.)

**LEGAL STANDARD**

A petition for a writ of habeas corpus under Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by

non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

**DISCUSSION**

In seeking a writ of habeas corpus, the petitioner alleges that he was unlawfully arrested without a warrant, that ICE did not conduct an individualized custody determination or otherwise afford the petitioner due process, and that ICE did not identify the statutory basis for arrest and detention or produce the administrative record, in violation of the Fourth Amendment, Fifth Amendment, the Immigration Nationality Act ("INA"), and the governing regulations. (*See* ECF No. 9 ¶¶ 31–41.) The petitioner seeks "immediate habeas relief unless Respondents promptly produce the complete administrative record and establish a lawful basis for custody; and that, at minimum, he is entitled to whatever contemporaneous notice, individualized custodial determination, and opportunity to be heard the Constitution and the governing statutory framework require." (*See* ECF No. 9 ¶ 37.) He also seeks an order prohibiting the government from transferring him, "compel[ling] disclosure of the key documents," "requir[ing] Petitioner's production before the Court," and an order directing "immediate release." (*See* ECF No. 9 ¶ 45.)

The government argues that the Court does not have jurisdiction to grant the petitioner's petition because he is indirectly challenging an order of removal, which only the Court of Appeals can review, pursuant to 8 U.S.C. § 1252(a)(5). (ECF No. 12 at 4–6.) The government also argues that 8 U.S.C. § 1252(g) precludes district courts from issuing an order that would prevent or hinder ICE from executing a removal order. (*Id.* at 6–7.)[2] In the alternative, the

---

[2] According to the petitioner, he is not asking the Court to review a removal order. Rather, he is asking a "simpler" question: "whether ICE had lawful authority to stop a work van, break the window, force him out of the van, handcuff him, search Mr. Orellana Lainez's wallet, arrest him without a warrant, and then detain him based on paperwork created only after the seizure." (ECF No. 13 at 1.) The Court

4

government maintains that the petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1231(a)(5) because of his reinstated expedited removal orders, and that the length of his detention does not violate due process. (*See id.* at 9.) The Court agrees.

The Second Circuit has held that 8 U.S.C. § 1252(a)(5) "clearly preclude[s]" district courts from reviewing both direct and indirect challenges to removal orders. *See Delgado v. Quarantillo*, 643 F.3d 52, 54–55 (2d Cir. 2011). In *Delgado*, the petitioner sought to force an adjudication on the merits of a Form I-212 application for permission to reapply for admission after deportation or removal; the court found that he was making an indirect challenge to a removal order, because an I-212 waiver "is a necessary prerequisite to [the] ultimate goal of adjustment of status," and an "adjustment-of-status challenge is inextricably linked to the reinstatement of [a] removal order." *Id.* at 55 (quoting *Morales–Izquierdo v. Dep't of Homeland Sec.,* 600 F.3d 1076, 1082–83 (9th Cir. 2010)). Since *Delgado,* courts "have dismissed a wide variety of indirect challenges to removal orders for lack of jurisdiction." *Asylum Seeker Advoc. Project v. Barr*, 409 F. Supp. 3d 221, 225 (S.D.N.Y. 2019). For example, courts have determined that requests to stay removal orders are indirect challenges to those orders. *See, e.g., Joseph v. U.S. Attorney General*, 17-CV-5008, 2017 WL 6001776, at *1 (E.D.N.Y. Dec. 4, 2017) ("Since District Courts cannot review removal orders, they also cannot consider requests for stays of removal.").

In *Delgado*, however, the Second Circuit noted "that a suit brought against immigration authorities is not *per se* a challenge to a removal order; whether the district court has jurisdiction

---

construes this as a Fourth Amendment challenge based on warrantless arrest. The Court "need not reach the merits, however, because petitioner's Fourth Amendment challenge is not a basis for the grant of a writ of habeas corpus." *Leiva Garcia v. Shanahan*, No. 26-CV-1508, 2026 WL 1631608, at *2 (E.D.N.Y. June 6, 2026). "Petitioner cites no authority for his contention that a Fourth Amendment violation (if one occurred) would entitle him to release. And the substantial weight of authority is to the contrary." *Id.*

will turn on the substance of the relief that a plaintiff is seeking." 643 F.3d at 55. District courts have determined that they lack jurisdiction to grant relief that would leave the government "without a mechanism to enforce the removal order." *Nieto-Ayala v. Holder*, No. 08-CV-8347, 2011 WL 3918156, at *3 (S.D.N.Y. Aug. 30, 2011).

Here, ICE is detaining the petitioner "for the purpose of enforcing the reinstated final order of removal." (ECF No. 12 at 6.) The government argues that his challenge to the stop, arrest, and detention is therefore jurisdictionally barred. (*Id.*) The government cites cases in this district — including *Jimenez v. Shanahan, et al.*, No. 26-CV-1501, 2026 WL 1309291 (E.D.N.Y. May 13, 2026), *Sauceda Henriquez v. Noem*, 25-CV-7023, 2026 WL 111665 (E.D.N.Y. Jan. 15, 2026) and *Villatoro v. Noem*, No. 25-CV-5306, 2025 WL 2880140 (E.D.N.Y. Oct. 9, 2025) — in which courts determined that "the §§ 1252(a)(5) and 1252(b)(9) jurisdictional bar encompasses claims predicated on" constitutional violations. (*Id.* at 4–5.) The petitioner responds that he "seeks release from unlawful detention and review of an unlawful seizure," and that "[g]ranting that relief would not reopen the 2012 order, vacate the 2014 paperwork, or grant immigration status." (ECF No. 13 at 3.)

Nevertheless, the "substance of the relief," *Delgado*, 643 F.3d at 55, that the petitioner seeks is "[i]mmediate release from unlawful detention" and an injunction preventing the government from "re-detain[ing] [him] without notice and an opportunity to be heard," (ECF No. 9 ¶ 13). But the petitioner is detained pursuant to 8 U.S.C. § 1231 so that he can be removed from the country.[3] Releasing him from mandatory detention would frustrate the government's

---

[3] "Congress has created an expedited process for aliens who reenter the United States without authorization after having already been removed." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). Section 1231(a)(5) provides, "If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and

ability to remove him. Accordingly, the petitioner is making an indirect challenge to the removal order, and the requested relief would leave the government without a mechanism to enforce the removal order. *See Sauceda Henriquez*, 2026 WL 111665, at \*4 ("Courts in this circuit have found that a challenge to a petitioner's detention, following an order of removal, constitutes such an indirect challenge to an order of removal."); *Lin v. Borgen*, No. 25-CV-05618, 2025 WL 2158874, at \*4 (S.D.N.Y. July 30, 2025) ("Petitioner's request to release him from his current detention . . . is, in sum and substance, a challenge to his final order of removal."). Therefore, the Court does not have jurisdiction to grant the relief the petitioner seeks.[4]

Even if the Court did have jurisdiction to grant the relief the petitioner seeks, it would not do so because the petitioner's arguments fail on the merits. Noncitizens who are subject to reinstated orders of removal and detained pursuant to Section 1231(a)(5), as the petitioner is here, are not entitled to bond hearings or other discretionary relief. *Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021). The petitioner's detention is mandatory and well within the statutory 90-day period for removal. 8 U.S.C. § 1231(a)(1)(A), (a)(5). Moreover, ICE had the authority to arrest the petitioner without a warrant once it learned he had previously been removed from the United States and determined the petitioner was a flight risk who was likely to escape before

---

the alien shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5). A reinstated removal order is a final order of removal, *Guzman Chavez*, 594 U.S. at 534, so the petitioner's detention is authorized by § 1231(a). Furthermore, the "government is required to detain an alien ordered removed until removal is effected, at least for the removal period." *Turkmen v. Ashcroft*, 589 F.3d 542, 547 (2d Cir. 2009).

[4] To the extent the petitioner seeks an order directing the government to identify the statutory basis for detention and to produce the administrative record including the reinstated removal order (*see* ECF No. 9 ¶ 13), those requests are moot because the government has provided the requested information, (*see* ECF Nos. 12, 12-1–12-5).

a warrant could be obtained.  (ECF No. 12 at 2–3.)  *See* 8 U.S.C. § 1357(a).[5]  Accordingly, the

petitioner has no basis for habeas relief.

**CONCLUSION**

For these reasons, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is

denied.  The motion for a temporary restraining order is denied.  Accordingly, the Court vacates

the part of its May 28, 2026 order enjoining the government from transferring the petitioner out

of this district.

**SO ORDERED.**

s/Ann M. Donnelly<br>ANN M. DONNELLY<br>United States District Judge

Dated: Brooklyn, New York
       June 18, 2026

---

[5] The petitioner concedes that "[o]fficers may arrest without a warrant only if they have reason to believe the person is removable and likely to escape before a warrant can be obtained."  (ECF No. 9 ¶ 64.)